IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GROUP CG BUILDERS AND
CONTRACTORS and LAURA CABRERA,   :

    Plaintiffs,                                                  :

v.                                                                        :    CA 11-00729-KD-C

CAHABA DISASTER RECOVERY, L.L.C.,
DRC EMERGENCY SERVICES, L.L.C.,
and STEWART GAMBLE FUZZELL, Jr.,    :

    Defendants.                                               :

## ORDER

Pending before the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) are the defendants' motion to dismiss or stay proceedings and brief in support (Docs. 13 & 14), filed March 6, 2012; the plaintiffs' opposition (Doc. 26), filed April 4, 2012; and the defendants' reply (Doc. 27), filed April 18, 2012.

### Background

The plaintiffs—a citizen of the Dominican Republic, domiciled there, and a corporation incorporated under the laws of, and with its principal place of business in, the Dominican Republic (Doc. 1, ¶ 1)—initiated this suit on December 29, 2011, against the defendants: Mr. Fuzzell, an individual domiciled in Alabama, Cahaba Disaster Recovery, L.L.C. ("Cahaba Alabama"), and DRC Emergency Services, L.L.C. ("DRC"), both Alabama limited liability companies (*id*.), alleging, broadly, breach of a contract for the removal of debris, resulting from the devastating January, 2010 Haitian Earthquake, and the related loss of, or damage to, a track excavator (*see generally id*., ¶¶ 9-71).

Count Seven of the complaint, titled "Enterprise Entity/Alter Ego/Piercing the Corporate Veil," is not a separate count/cause of action.  It, instead, sets forth law and facts in support of the plaintiffs' contention that the entities that, on February 5, 2010, actually executed the Contract ("Cahaba Disaster Recovery Corp.") and the Annex ("DRC – Buddy Fuzzell") are alter egos of and/or dominant corporations under the control of the named defendants.[1]  The plaintiffs also allege, however, that at least one named defendant has been involved in the performance of the contract.  Specifically, the plaintiffs allege that the defendants, via wire transfer from Defendant Cahaba Alabama, "made several partial payments to [them] pursuant to the Contract and Annex[.]"  (*Id.*, ¶ 79.)  Defendant Cahaba Alabama, further, "offered a partial payment

---

[1] The complaint specifically provides, based on the allegations in paragraphs 71 through 86, that:

> Cahaba Disaster Recovery, L.L.C. and DRC Emergency Services, L.L.C. are the alter egos or dominant corporations which control the subservient Cahaba Disaster Recovery Corp. and should be liable to Plaintiffs under Counts One through Six, above.
>
> Stewart "Buddy" Gamble Fuzzell, Jr., is the alter ego of Cahaba Disaster Recovery, L.L.C., DRC Emergency Services, L.L.C. and/or Cahaba Disaster Recovery Corp., such that the corporate veil should be pierced and Mr. Fuzzell should be held liable to Plaintiffs under Counts One through Six, as well.
>
> As a result, all three Defendants, Cahaba Disaster Recovery, L.L.C., DRC Emergency Services, L.L.C., and Stewart "Buddy" Gamble Fuzzell, Jr., should be held liable, jointly, severally, and in solido, to Plaintiffs for all the claims brought herein.

(Doc. 1, ¶¶ 87-89.)

to Plaintiffs to settle the claims [underlying this lawsuit] 'as full and final payment for work performed for Cahaba [Alabama and DRC] in Haiti[.]"   (*Id.*, ¶ 80.)

Discussion

A *forum non conveniens* analysis begins with the presumption that a plaintiff is entitled to the forum he or she selects.  That presumption, however, while still applicable, applies with far less force where—like here—foreign plaintiffs choose to litigate in the United States:

> [T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum . . . . When the plaintiff is foreign, however, this assumption is much less reasonable.  Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (alterations to original); *see also La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (explaining that "[a] plaintiff who chooses a foreign forum **substantially** undercuts the presumption his choice is reasonable") (emphasis added); *compare Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) ("A district court must find 'positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'") (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004)), *with Rolls-Royce Commercial Marine, Inc. v. N.H. Ins. Co.*, No. 09–61329–CIV, 2010 WL 5067608, at *4 (S.D. Fla. Dec. 7, 2010)

("Here, none of the Rolls-Royce Plaintiffs are Florida corporations, and while two of the Plaintiffs are incorporated elsewhere in the United States, Rolls-Royce plc, which is the only named beneficiary of the policies in dispute, is a UK corporation. Consequently, Rolls-Royce's forum selection is only entitled to limited deference.").

Against this backdrop, the defendants, as proponents of a motion to dismiss a complaint on the grounds of *forum non conveniens*, must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe*, 631 F.3d at 1330 (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)). Thus, the Court, initially, must find that trial in the Dominican Republic is available and that such a trial will be adequate. *See id.* at 1330; *cf. Leon*, 251 F.3d at 1311 ("Availability and adequacy warrant separate consideration."). However, given the allegations in the plaintiffs' complaint, the parties have not provided the Court with sufficient information to determine whether the Dominican Republic is an *adequate* alternative forum.

1. **The Adequacy Standard.**

For an alternative forum to be adequate, it must permit "litigation of the subject matter of the dispute[,]" *Piper Aircraft*, 454 U.S. at 254 n.22; "[a]n alternative forum is inadequate 'if the remedy provided by th[at] alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all[,]'" *Tazoe*, 631 F.3d at 1330-31 (quoting *Piper Aircraft*, 454 U.S. at 254). "That the law of the foreign forum differs from American law

'should *ordinarily* not be given conclusive or even substantial weight' in assessing the adequacy of the forum." *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (quoting *Piper Aircraft*, 454 U.S. at 247) (emphasis added); *cf. Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 742675, at *3 (S.D. Fla. Mar. 20, 2009) ("'An adequate forum need not be a perfect forum'; 'however, the forum must afford a satisfactory remedy.' A forum is adequate even though it provides a remedy that would be substantially less than the remedy in the United States.") (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001); other citations omitted).

But there are exceptions to this general rule. For example, in *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138 (5th Cir. 1989), the Fifth Circuit determined that Bermudian courts, which would not recognize the plaintiffs' RICO claim, were nevertheless adequate:

> [W]e must now turn to what we believe to be the critical issue in this case: Without the RICO claim, will the plaintiffs "be deprived of any remedy" on the basis of the factual predicate of their complaint? The important inquiry here is whether the facts more resemble the products liability facts of [*Piper Aircraft v.* ]*Reyno* or the antitrust facts of *Mitsui*.² If they come

---

² As discussed by the Fifth Circuit, in *Kempe*,

> [i]n *Industrial Development Corp. v. Mitsui & Co.*, 671 F.2d 876 (5th Cir.1982), *vacated and remanded on other grounds*, 460 U.S. 1007 (1983), [the Fifth Circuit] held that a complaint seeking relief *solely* under the federal antitrust laws, sections 1 and 2 of the Sherman Act, could not be dismissed under the doctrine of *forum non conveniens*. We stated there that to determine Indonesia to be the proper forum for that case would, in effect, "deprive[ ] [plaintiffs] of any remedy." *Reyno*, 454 U.S. at 255.
>
> [W]e have little doubt that the Indonesian courts would quite properly refuse to entertain plaintiffs' Sherman Act claim. A dismissal for *forum*

within the rule of *Reyno*, appellants attempt to prove RICO immunity must fail; if they come within the rule of *Mitsui*, they will prevail.

To ask this question is to answer it. The district court specifically found that even without the RICO count, Bermuda permits litigation in its courts of the fraud, negligent misrepresentation, breach of fiduciary duty, and piercing the corporate veil counts of the liquidators' complaint. Bermuda courts are totally competent to adjudge the claims that defendants falsified Mentor's financial statements, that the statements materially overstated Mentor's financial health and concealed its dire financial condition, and that they failed to disclose and properly account for the true nature of the purported reinsurance agreements between Mentor and Pinnacles.

Moreover, the district court found that the Bermuda trial courts have the power to "see to it that defendants make good whatever harm they did." Dist. ct. opin. at 1071. Accordingly, we conclude that "although [the liquidators'] potential damage award may be smaller, there is no danger they will be deprived of any remedy or treated unfairly." *Reyno*, 454 U.S.

---

> *non conveniens*, then, would be the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act.

*Mitsui*, 671 F.2d at 891.

The crucial point succinctly stated in *Mitsui* was later amplified in *Laker Airways Ltd. v. Pan American World Airways*, 568 F. Supp. 811, 818 (D.D.C. 1983):

> Antitrust cases are unlike litigation involving contracts, torts, or other matters recognized in some form in every nation. A plaintiff who seeks relief by means of one of these types of actions may appropriately be sent to the courts of another nation where presumably he will be granted, at least approximately, what he is due. But the antitrust laws of the United States embody a specific congressional purpose to encourage the bringing of private claims in the American courts in order that the national policy against monopoly may be vindicated. To relegate a plaintiff to the courts of a nation which does not recognize these antitrust principles would be to defeat this congressional direction by means of a wholly inappropriate procedural device.

The foregoing relevant legal precepts having been stated, we now turn to the appellants' specific contentions before us.

*Id.* at 1142-43 (emphasis added and internal citations modified).

> at 255.  This case is a far cry from *Mitsui*, where the complaint was solely bottomed on Sections 1 and 2 of the Sherman Act.   In that case, dismissal in favor of a forum in Indonesia would have been the functional equivalent of denying the plaintiffs any remedy whatsoever.

*Id.* at 1145 (footnotes added); *see also Haynsworth v. Lloyd's of London*, 933 F. Supp. 1315, 1324 (S.D. Tex. 1996) (rejecting plaintiffs' argument "that [an] English forum is not adequate because it deprive[d] them of specific claims like the American federal securities laws or Texas consumer acts"; noting that (1) "[e]ven though they would have to rely on a different standard on negligence and it was likely that their potential damages award would be smaller, there is no danger that they will be deprived of all remedies or treated unfairly" and (2) "[e]ven though Lloyd's can raise defenses to the plaintiffs' claims that may not be available here, Lloyd's is not immune from acts it took in bad faith, like fraud, intentional misrepresentation, and conversion"; and ultimately concluding that "[t]he plaintiffs' strict view of remedies would invalidate all forum selection because remedies, by the very nature of differing jurisdictions, will inevitably vary").

In *Carnival Cruise Lines, Inc. v. Oy Wartsila Ab*, 159 B.R. 984 (Bankr. S.D. Fla. 1993), the plaintiff alleged, among other inadequacies, that Finnish courts do not recognize the theory of piercing the corporate veil, *see id.* at 991,[3] but the bankruptcy court ultimately found that Finland was an adequate forum and determined that *forum non conveniens*

---

[3] The Court, however, relying on an affidavit provided by Finnish counsel, later clarified "that piercing the corporate veil has been recognized by Finnish court decisions dating back to 1929, and that a comprehensive report on the doctrine was presented at the 1984 Nordic Lawyers Meeting in Oslo."  *Id.* at 993.

7

Case 1:11-cv-00729-KD-C   Document 28   Filed 05/25/12   Page 8 of 11

dismissal should be granted, *see id.* at 1002-03; *see also id.* at 991 ("At the outset we note that this preliminary 'suitability' question is not a high hurdle. . . .  The guaranty of Finish jurisdiction over the defendants [both Finnish corporations] is alone a sufficient basis for conclude that the Finish forum is adequate.").

The bankruptcy court, in *Oy Wartsila Ab*, was "guided by the ruling of the Court of Appeals for the Eleventh Circuit that the remedy abroad need not be equivalent to that offered by the domestic court:

> The Supreme Court rejected the usual canard offered by courts in refusing dismissals.  It is no longer sufficient to retain jurisdiction simply because the remedy available in an alternative forum is less substantively generous.  [*Piper Aircraft*, 454 U.S.] at 249–55.  Unless the other nation affords a remedy "so clearly inadequate that it is no remedy at all," substantial weight may not be given to this consideration.  *Id.* at 251.

*Id.* (quoting *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 (11th Cir. 1985)) (alteration to internal citations); *see also Meisel v. Ustaoglu*, No. CIV. A. AW–98–3863, 2000 WL 33374486, at *5 (D. Md. Mar. 31, 2000) ("Plaintiff now contends that some of his theories—most notably his 'piercing the corporate veil'—may not be widely recognized in the Turkish courts.  However, dismissal on the grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is 'less favorable to the plaintiff's chance of recovery.'") (quoting *Piper Aircraft*, 454 U.S. at 250), *aff'd*, 5 Fed. App'x (4th Cir. Mar. 6, 2001), *cert. denied*, 534 U.S. 890 (2001).

8

**2.     Its Application to this Case.**

Here, the plaintiffs contend that the Dominican Republic is not an adequate forum because the defendants have failed to prove that "a remedy for Group CG's negligence action, or more importantly, Group CG's claim against Cahaba for alter ego/piercing the corporate veil" (Doc. 26 at 7) is available in the Dominican Republic, further alleging that

> Group CG's alter ego cause of action goes to the very heart of Group CG's lawsuit, and must be available to Group CG to be awarded full relief against Cahaba.  As Cahaba has failed to prove that the Dominican Republic offers any such relief, Cahaba has failed to meet its burden of proving that the Dominican Republic is an adequate alternative forum

(*Id.* at 8; *see also* Doc. 1, ¶¶ 71-89.)

On reply, the defendants are correct that, to be an adequate alternative forum, the Dominican Republic neither has to, one, permit litigation of each of the plaintiffs' claims, or two, "provide identical grounds for relief as the laws of the United States."   (Doc. 27 at 6.)   The subject matter of this lawsuit, moreover, is, primarily, "whether Plaintiffs are entitled to payment from Defendants for services performed under the contract and whether defendants have damaged or destroyed plaintiffs' excavator, entitling Plaintiffs to recover damages."   (*Id.*)

And while piercing the corporate veil may simply be one theory of recovery (*see id.*), **because** the plaintiffs allege that the entities that executed the Contract and Annex are alter egos of the defendants named in this lawsuit—the same defendants that stipulate that they will submit to jurisdiction in the Dominican Republic and waive any

9

applicable statute of limitations defenses that could be asserted in a court therein—the undersigned cannot say, based on the information presently before the Court (*see, e.g.*, Doc. 14-2, Alberto Fiallo Decl.), which does not specify whether piercing the corporate veil is a theory recognized in Dominican law, that "dismissal in favor of a forum in [the Dominican Republic will be] the functional equivalent of denying the plaintiffs any remedy whatsoever [against the named defendants]," *Kempe*, 876 F.2d at 1145; *see id.* (noting that the courts of the alternative forum, Bermuda, which was found to be adequate, recognized claims for "piercing corporate veil").[4]

---

[4] Should this case proceed in this Court, the law of the Dominican Republic may apply to the interpretation of the contract between the parties—something both sides acknowledge. (*See* Doc. 14 at 19 n.2; Doc. 26 at 17 (the "possibility that foreign law may apply to [the] Contract [is not] alone [ ] sufficient to warrant dismissal for forum non conveniens[]")). *Cf. Owens v. Superfos A/S*, 170 F. Supp. 2d 1188, 1194-95 (M.D. Ala. 2001) ("[T]he long standing rule in Alabama is that "'the nature, obligation, validity and interpretation of a contract are according to the laws of the state where made, ***or where performance begins***, . . . unless it is to be performed in some other place, in which case the law of the other place and of performance will govern.'") (quoting *J.R. Watkins v. Hill*, 108 So. 244, 245 (Ala. 1926) (emphasis added by the Middle District)).

That the law of the Dominican Republic may apply to the interpretation of the contract, however, does not mean that it may also apply to the question of alter ego. "Critical to any conflicts analysis is the notion that a court must examine the choice of law rules not with regard to various states' interest in general, but precisely with regard to each state's interest in the specific question involved." *Foster v. United States*, 768 F.2d 1278, 1280 (11th Cir. 1985) (citing *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594 (7th Cir. 1981) (in which the Seventh Circuit, "approve[d] the concept of 'depecage': the process of applying rules of different states on the basis of the precise issue involved[,] *id.* at 611)); *see also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1172 n.13 (11th Cir. 2009) ("It may seem anomalous that federal maritime law may have governed Cooper's personal injury action while Dutch law governs certain third-party claims that are based on that action, but such an outcome is explicitly recognized by the conflict of laws doctrine of depecage.") (citing *Foster*, 768 F.2d at 1281); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1077-78 (E.D. Wis. 2008) (applying Wisconsin choice of law rules, which are similar to Alabama's, to determine that, as to the breach of contract claims, because Lithuania had "the most significant relationship, taking into account the place of contracting, place of negotiations of the contract, place of performance, location of the subject matter of the contract,

Conclusion

Based on the foregoing, the defendants are **requested** to file a supplemental brief in response to this order no later than **June 8, 2012**. That brief should explain whether the theory of piercing the corporate veil is recognized in Dominican law and, if it is not, why a Dominican court may still provide the plaintiffs in this case with a satisfactory remedy against the named defendants. The plaintiffs may file a reply no later than **June 15, 2012**.[5]

**DONE and ORDERED** this the 25th day of May, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

and location of the parties," its law applied; but, "as to the question of . . . alter ego," Wisconsin's law applied: "The general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized.") (citations omitted).

Thus, if faced with the issue, this Court could likely find that Alabama law applies to the alter ego/veil piercing issue. *See, e.g.*, *Charter Servs., Inc. v. DL Air, LLC*, 711 F. Supp. 2d 1298, 1306 n.13 (S.D. Ala. 2010) ("DL Air was incorporated in the State of Delaware. As such, Plaintiffs' alter ego/veil piercing claims against DL Air are governed by Delaware law.") (citing *Jefferson Pilot Broad. Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980) (concluding that "[c]onsistently with the first Restatement, we think that Alabama courts would look to the law of the incorporating state . . . in deciding whether to recognize or disregard a corporate entity").

But there is no evidence before the Court to show how, or even if, plaintiffs will be disadvantaged if Alabama law was not—or if Dominican law was—applied to the alter ego/veil piercing claims. The Court, moreover, lacks information regarding (1) whether—and if so, which—choice-of-law rules would be applied by a court in the Dominican Republic; and (2) if a court in the Dominican Republic were to apply its own law, rather than Alabama's law, to the question of alter ego, whether the theory of "piercing the corporate veil" would be unavailable.

[5] The undersigned finds it more reasonable to flesh-out this issue now than upon objections to the report and recommendation to the District Judge. *See* 28 U.S.C. § 636(b)(1)(B) (authorizing the Magistrate Judge to gather evidence with regard to dispositive motions referred from the District Judge).

11