**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

GROUP CG BUILDERS AND
CONTRACTORS and LAURA CABRERA, :

     Plaintiffs,                :

v.                           :       CA 11-00729-KD-C

CAHABA DISASTER RECOVERY, L.L.C.,
DRC EMERGENCY SERVICES, L.L.C.,
and STEWART GAMBLE FUZZELL, Jr.,  :

     Defendants.           :

<u>**REPORT AND RECOMMENDATION**</u>

Pending before the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) are the defendants' motion to dismiss or stay proceedings and brief in support (Docs. 13 & 14), filed March 6, 2012; the plaintiffs' opposition (Doc. 26), filed April 4, 2012; the defendants' reply (Doc. 27), filed April 18, 2012; and the defendants' supplemental brief in support (Doc. 29) and the plaintiffs' reply (Doc. 30), both filed in response to the Court's May 25, 2012 Order (Doc. 28) on June 8, 2012 and June 15, 2012, respectively.

For the reasons set forth herein, the undersigned **RECOMMENDS** that the motion be **GRANTED** and that this matter be **DISMISSED** on *forum non conveniens* grounds subject to the conditions set forth in the conclusion of this recommendation.

<u>Background</u>

The plaintiffs—a citizen of the Dominican Republic, domiciled there, and a corporation incorporated under the laws of, and with its principal place of business in, the Dominican Republic (Doc. 1, ¶ 1)—initiated this suit on December 29, 2011, against

the defendants: Mr. Fuzzell, an individual domiciled in Alabama, Cahaba Disaster Recovery, L.L.C. ("Cahaba Alabama"), and DRC Emergency Services, L.L.C. ("DRC"), both Alabama limited liability companies (*id*.), alleging, broadly, breach of a contract for the removal of debris, resulting from the devastating January, 2010 Haitian Earthquake, and the related loss of, or damage to, a track excavator (*see generally id.*, ¶¶ 9-71).

Count Seven of the complaint, titled "Enterprise Entity/Alter Ego/Piercing the Corporate Veil," is not a separate count/cause of action. It, instead, sets forth allegations in support of the plaintiffs' contention that the entities who, on February 5, 2010, actually executed the Contract ("Cahaba Disaster Recovery Corp.") and the Annex ("DRC – Buddy Fuzzell") are alter egos of and/or dominant corporations under the control of the named defendants.[1]   The plaintiffs also allege, moreover, that at least one named defendant has been involved in the performance of the contract. Specifically,

---

[1]      The complaint specifically provides, based on the allegations in paragraphs 71 through 86, that:

> Cahaba Disaster Recovery, L.L.C. and DRC Emergency Services, L.L.C. are the alter egos or dominant corporations which control the subservient Cahaba Disaster Recovery Corp. and should be liable to Plaintiffs under Counts One through Six, above.

> Stewart "Buddy" Gamble Fuzzell, Jr., is the alter ego of Cahaba Disaster Recovery, L.L.C., DRC Emergency Services, L.L.C. and/or Cahaba Disaster Recovery Corp., such that the corporate veil should be pierced and Mr. Fuzzell should be held liable to Plaintiffs under Counts One through Six, as well.

> As a result, all three Defendants, Cahaba Disaster Recovery, L.L.C., DRC Emergency Services, L.L.C., and Stewart "Buddy" Gamble Fuzzell, Jr., should be held liable, jointly, severally, and in solido, to Plaintiffs for all the claims brought herein.

(Doc. 1, ¶¶ 87-89.)

the plaintiffs allege that the defendants, via wire transfer from Defendant Cahaba Alabama, "made several partial payments to [them] pursuant to the Contract and Annex[.]"   (Id., ¶ 79.)   Defendant Cahaba Alabama, further, allegedly "offered a partial payment to Plaintiffs to settle the claims [underlying this lawsuit] 'as full and final payment for work performed for Cahaba [Alabama and DRC] in Haiti[.]"   (Id., ¶ 80.)

<u>Discussion</u>

A.    *Forum non conveniens* dismissal.

The Court's analysis begins with the presumption that a plaintiff is entitled to the forum he or she selects.   That presumption, however, while still applicable, applies with far less force where—like here—foreign plaintiffs choose to litigate in the United States:

> [T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum . . . . When the plaintiff is foreign, however, this assumption is much less reasonable.   Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (alterations to original); *see also La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (explaining that "[a] plaintiff who chooses a foreign forum ***substantially*** undercuts the presumption his choice is reasonable") (emphasis added); *compare Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) ("A district court must find 'positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny ***a United States citizen*** access

3

to the courts of this country.'") (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004)), *with Rolls-Royce Commercial Marine, Inc. v. N.H. Ins. Co.*, No. 09–61329–CIV, 2010 WL 5067608, at *4 (S.D. Fla. Dec. 7, 2010) ("Here, none of the Rolls–Royce Plaintiffs are Florida corporations, and while two of the Plaintiffs are incorporated elsewhere in the United States, Rolls–Royce plc, which is the only named beneficiary of the policies in dispute, is *a UK corporation*.   Consequently, Rolls–Royce's forum selection is only entitled to limited deference.") (emphases added).

Against this backdrop, the defendants, as proponents of a motion to dismiss on the grounds of *forum non conveniens*, must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."   *Tazoe*, 631 F.3d at 1330 (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)).

           1.      Availability of an adequate alternative forum.

The defendants must establish both that trial in the Dominican Republic is available and that such a trial will be adequate.   *See id.* at 1330; *cf. Leon*, 251 F.3d at 1311 ("Availability and adequacy warrant separate consideration.").

           a.      Availability.

"An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred.   [And, o]rdinarily, the requirement of an available forum will be satisfied when the defendant is amenable to

4

process in the other jurisdiction." *Tazoe*, 631 F.3d at 1330 (internal citation and quotation marks omitted and some alteration to original).   Similar to the manufacturers in *Tazoe*, Cahaba Alabama and DRC stipulate "that they will allow Plaintiffs to reinstate their claims against them[—those claims, filed by the plaintiffs in the Dominican Republic, were dismissed for lack of prosecution—]within 180 days of dismissal of this case without raising any applicable statute of limitations or other defense as a bar to such reinstatement [and] that they will submit to the jurisdiction of the Dominican Republic court and will respect any final judgment of the Dominican Republic court."   (Doc. 14 at 12.)   Defendant Fuzzell, who was not named in the lawsuits filed in the Dominican Republic, offers a similar stipulation and further stipulates "that he will accept service of process in the Dominican Republic."   (*Id.* at 13.)   *Compare id., with Tazoe*, 631 F.3d at 1330 ("The manufacturers have stipulated that they will make themselves amenable to process in Brazil as a condition of dismissal.   Specifically, the manufacturers have stipulated that they will consent to service of process in Brazil; toll any applicable Brazilian statutes of limitation; make relevant witnesses and documents available to a Brazilian civil court; and respect the final judgment of a Brazilian court.   These stipulations *ensure* the availability of Brazil as an alternative forum.") (emphasis added).

In response, the plaintiffs contend that "while Defendants have stipulated that they will permit Group CG to reinstate any claims from the two dismissed lawsuits, Defendants have not established that the Dominican Republic will acknowledge such a stipulation."   (Doc. 26 at 19.)   The defendants, however, offer the declaration of Alberto

Fiallo, an attorney licensed to practice in the Dominican Republic (Doc. 14-2),[2] in which

Mr. Fiallo provides:

> There are no obstacles preventing a Dominican Republic court from exercising jurisdiction over American defendants who consent to such jurisdiction.   In this case, the contract between Cahaba Disaster Recovery, Corp. and Laura Cabrera was signed on February 5, 2010 and establishes no expiration date.  Any lawsuit regarding the breach of said contract could be brought again to the courts of the Dominican Republic, taking into consideration the fact that the applicable statute of limitations is two years from the alleged breach of the contract.

> .           .           .

> For the pending claim and the dismissed claims, the Plaintiffs may continue to seek adequate remedy in the Dominican Republic.

(*Id.*, ¶¶ 2, 7.)

The sole case the plaintiffs provide in support of their position—that the

defendants have failed to *establish* that courts in the Dominican Republic will honor the

defendants' jurisdictional stipulations—is *Mercier v. Sheraton International, Inc.*, 935 F.2d

419 (1st Cir. 1991).   In that case, the First Circuit vacated the judgment of a trial court

that relied on the sparse—yet uncontroverted—affidavit of a Turkish law professor and

practicing attorney, offered to support the position that the Republic of Turkey was an

available and adequate forum.   *See id.* at 424-26; *see also Leon*, 251 F.3d at 1311 (relying on

*Mercier* for the notion that "[c]ourts have been strict about requiring that defendants

---

[2]        Through his declaration, Mr. Fiallo informs the Court that he is familiar with the two lawsuits filed by the plaintiffs in the Dominican Republic because he worked "as litigation attorney in charge of these lawsuits for Pellerano & Herrera, the law firm that represented DRC in . . . [those] cases."   (*Id.*, ¶ 3.)

demonstrate that the alternative forum offers at least some relief").   As to whether the statute of limitations was a jurisdictional bar in Turkey, Judge Louis H. Pollack, sitting by designation, noted that the professor's affidavit "*wholly fail[ed] to address th[e] question*."   *Mercier*, 935 F.2d at 426 (emphasis added).   Writing for the panel, Judge Pollack further noted

> that, at the oral argument of this appeal, Sheraton International's counsel expressed a willingness to waive Sheraton International's right to raise in Turkish courts any statute of limitations claim that would not be available should the action go forward in Massachusetts.   That concession is insufficient for two reasons.   First, it comes too late to have any bearing on whether the district court—not apprised of such a willingness—properly found Turkey to be an adequate alternative.   Second, even given a willingness on Sheraton International's part to abandon such defenses, the Merciers must be given an opportunity to address the question whether Turkish courts would accept such a waiver and, if they would not, to argue the effect of such a refusal to the court deciding the *forum non conveniens* motion.

*Id.* (footnote omitted).

Unlike the affidavit at issue in *Mercier*, Attorney Fiallo's declaration (Doc. 14-2) adequately addresses both the statute of limitations issue and whether courts in the Dominican Republic will accept the defendants' stipulations to waive bars to pursuing this litigation in the Dominican Republic.   (*See id.*, ¶ 2 ("There are **no obstacles** preventing a Dominican Republic court from exercising jurisdiction over American defendants who consent to such jurisdiction.") & ¶ 6 ("For the pending claim and the dismissed claims, the Plaintiffs **may continue to seek adequate remedy** in the Dominican Republic.") (emphases added).)   Moreover, the plaintiffs here—unlike the

7

Merciers—have been given the opportunity to address whether courts in the Dominican Republic will accept the defendants' waivers, and have offered no evidence to contradict the defendants' evidence that there are "no obstacles preventing a Dominican Republic court from exercising jurisdiction over American defendants who consent to such jurisdiction."   (Doc. 14-2, ¶ 2.)   Accordingly, it appears that the Dominican Republic is an *available* alternative forum.

> ### b.      Adequacy.

For an alternative forum to be adequate, it must permit "litigation of the subject matter of the dispute."   *Piper Aircraft*, 454 U.S. at 254 n.22.[3]   And "[a]n alternative forum is inadequate 'if the remedy provided by th[at] alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'"   *Tazoe*, 631 F.3d at 1330-31 (quoting *Piper Aircraft*, 454 U.S. at 254).   Significantly, "[t]hat the law of the foreign forum differs from American law 'should *ordinarily* not be given conclusive or even substantial weight' in assessing the adequacy of the forum."   *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (quoting *Piper Aircraft*, 454 U.S. at 247) (emphasis added); *cf. Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 742675, at *3 (S.D. Fla. Mar. 20, 2009) ("'An adequate forum need not be a perfect forum'; 'however,

---

[3]      The plaintiffs do not seriously challenge the evidence the defendants offer (*see* Doc. 14 at 9-12 (citing cases)); Doc. 14-2, Attorney Fiallo's declaration, ¶¶ 5 & 6) to show that the Dominican Republic is an adequate forum because it will permit "litigation of the subject matter of the dispute."   *See also In re Bancredit Cayman Ltd.*, Bankruptcy No. 06–11026 (SMB); Adversary No. 08–1147, 2008 WL 5396618, at *3 (Bankr. S.D.N.Y. Nov. 25, 2008) ("[T]he Dominican courts are equipped to hear breach of contract and collections disputes[.]").

the forum must afford a satisfactory remedy.'   A forum is adequate even though it provides a remedy that would be substantially less than the remedy in the United States.") (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001); other citations omitted).

That a foreign forum is inadequate if a plaintiff will be deprived of ***any*** remedy is, in essence, the same as a plaintiff not being permitted to litigate "the subject matter of [his or her] dispute."   *Piper Aircraft*, 454 U.S. at 254 n.22.   Such a finding—that a plaintiff will be deprived of any remedy—is a narrow exception to the general rule that less of a remedy does not make a foreign forum inadequate.   And the undersigned finds that the analysis in *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138 (5th Cir. 1989)—in which the Fifth Circuit determined that Bermudian courts, which would not recognize the plaintiffs' RICO claim, were nevertheless adequate—is helpful to illustrate this narrow exception:

> [W]e must now turn to what we believe to be the critical issue in this case: Without the RICO claim, will the plaintiffs "be deprived of any remedy" on the basis of the factual predicate of their complaint?   The important inquiry here is whether the facts more resemble the products liability facts of [*Piper Aircraft v.* ]*Reyno* or the antitrust facts of *Mitsui*.[4]   If they come

---

[4]      As discussed by the Fifth Circuit, in *Kempe*,

[i]n *Industrial Development Corp. v. Mitsui & Co.*, 671 F.2d 876 (5th Cir.1982), *vacated and remanded on other grounds*, 460 U.S. 1007 (1983), [the Fifth Circuit] held that a complaint seeking relief ***solely*** under the federal antitrust laws, sections 1 and 2 of the Sherman Act, could not be dismissed under the doctrine of *forum non conveniens*.   We stated there that to determine Indonesia to be the proper forum for that case would, in effect, "deprive[ ] [plaintiffs] of any remedy."   *Reyno*, 454 U.S. at 255.

9

within the rule of *Reyno*, appellants attempt to prove RICO immunity must fail; if they come within the rule of *Mitsui*, they will prevail.

To ask this question is to answer it.   The district court specifically found that even without the RICO count, Bermuda permits litigation in its courts of the fraud, negligent misrepresentation, breach of fiduciary duty, and piercing the corporate veil counts of the liquidators' complaint.   Bermuda courts are totally competent to adjudge the claims that defendants falsified Mentor's financial statements, that the statements materially overstated Mentor's financial health and concealed its dire financial condition, and that they failed to disclose and properly account for the true nature of the purported reinsurance agreements between Mentor and Pinnacles.

Moreover, the district court found that the Bermuda trial courts have the power to "see to it that defendants make good whatever harm they did."   Dist. ct. opin. at 1071.   Accordingly, we conclude that "although [the liquidators'] potential damage award may be smaller, there is no danger they will be deprived of any remedy or treated unfairly."   *Reyno*, 454 U.S. at 255.   This case is a far cry from *Mitsui*, where the complaint was solely bottomed on Sections 1 and 2 of the Sherman Act.   In that case, dismissal

---

[W]e have little doubt that the Indonesian courts would quite properly refuse to entertain plaintiffs' Sherman Act claim.   A dismissal for *forum non conveniens*, then, would be the functional equivalent of a decision that defendants' acts are beyond the reach of the Sherman Act.

*Mitsui*, 671 F.2d at 891.

The crucial point succinctly stated in *Mitsui* was later amplified in *Laker Airways Ltd. v. Pan American World Airways*, 568 F. Supp. 811, 818 (D.D.C. 1983):

Antitrust cases are unlike litigation involving contracts, torts, or other matters recognized in some form in every nation.   A plaintiff who seeks relief by means of one of these types of actions may appropriately be sent to the courts of another nation where presumably he will be granted, at least approximately, what he is due.   But the antitrust laws of the United States embody a specific congressional purpose to encourage the bringing of private claims in the American courts in order that the national policy against monopoly may be vindicated.   To relegate a plaintiff to the courts of a nation which does not recognize these antitrust principles would be to defeat this congressional direction by means of a wholly inappropriate procedural device.

*Id.* at 1142-43 (emphasis added and internal citations modified).

in favor of a forum in Indonesia would have been the functional equivalent
of denying the plaintiffs any remedy whatsoever.

*Id.* at 1145 (footnotes added); *see also Haynsworth v. Lloyd's of London*, 933 F. Supp. 1315,

1324 (S.D. Tex. 1996) (rejecting the plaintiffs' argument "that [an] English forum is not

adequate because it deprive[d] them of specific claims like the American federal

securities laws or Texas consumer acts"; noting that (1) "[e]ven though they would have

to rely on a different standard on negligence and it was likely that their potential

damages award would be smaller, there is no danger that they will be deprived of all

remedies or treated unfairly" and (2) "[e]ven though Lloyd's can raise defenses to the

plaintiffs' claims that may not be available here, Lloyd's is not immune from acts it took

in bad faith, like fraud, intentional misrepresentation, and conversion"; and ultimately

concluding that "[t]he plaintiffs' strict view of remedies would invalidate all forum

selection because remedies, by the very nature of differing jurisdictions, will inevitably

vary").

    In *Carnival Cruise Lines, Inc. v. Oy Wartsila Ab*, 159 B.R. 984 (Bankr. S.D. Fla. 1993),

the plaintiff alleged, among other inadequacies, that Finnish courts do not recognize the

theory of piercing the corporate veil, *see id.* at 991,[5] but the bankruptcy court ultimately

found that Finland was an adequate forum and determined that *forum non conveniens*

dismissal should be granted, *see id.* at 1002-03; *see also id.* at 991 ("At the outset we note

---

[5]    The Court, relying on an affidavit provided by Finnish counsel, however, later
clarified "that piercing the corporate veil has been recognized by Finnish court decisions dating
back to 1929, and that a comprehensive report on the doctrine was presented at the 1984 Nordic
Lawyers Meeting in Oslo."  *Id.* at 993.

11

that this preliminary 'suitability' question is not a high hurdle. . . .   The guaranty of Finish jurisdiction over the defendants [both Finnish corporations] is alone a sufficient basis for conclude that the Finish forum is adequate.").

The bankruptcy court, in *Oy Wartsila Ab*, was "guided by the ruling of the Court of Appeals for the Eleventh Circuit that the remedy abroad need not be equivalent to that offered by the domestic court:

> The Supreme Court rejected the usual canard offered by courts in refusing dismissals.   It is no longer sufficient to retain jurisdiction simply because the remedy available in an alternative forum is less substantively generous.   [*Piper Aircraft*, 454 U.S.] at 249–55.   Unless the other nation affords a remedy "so clearly inadequate that it is no remedy at all," substantial weight may not be given to this consideration.   *Id.* at 251.

*Id.* (quoting *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 (11th Cir. 1985)) (alteration to internal citations); *see also Meisel v. Ustaoglu*, No. CIV. A. AW–98–3863, 2000 WL 33374486, at *5 (D. Md. Mar. 31, 2000) ("Plaintiff now contends that some of his theories—most notably his 'piercing the corporate veil'—may not be widely recognized in the Turkish courts.   However, dismissal on the grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is 'less favorable to the plaintiff's chance of recovery.'") (quoting *Piper Aircraft*, 454 U.S. at 250), *aff'd*, 5 Fed. App'x (4th Cir. Mar. 6, 2001), *cert. denied*, 534 U.S. 890 (2001).

Here, the plaintiffs contend that the Dominican Republic is not an adequate forum because the defendants have failed to prove that "a remedy for Group CG's

negligence action, or more importantly, Group CG's claim against Cahaba for alter ego/piercing the corporate veil" (Doc. 26 at 7) is available there, further alleging that

> Group CG's alter ego cause of action goes to the very heart of Group CG's lawsuit, and must be available to Group CG to be awarded full relief against Cahaba.   As Cahaba has failed to prove that the Dominican Republic offers any such relief, Cahaba has failed to meet its burden of proving that the Dominican Republic is an adequate alternative forum

(*Id.* at 8; *see also* Doc. 1, ¶¶ 71-89.)

On reply, the defendants are correct that, to be an adequate alternative forum, the Dominican Republic neither has to, <u>one</u>, permit litigation of each of the plaintiffs' claims, or <u>two</u>, "provide identical grounds for relief as the laws of the United States."   (Doc. 27 at 6.)   The defendants are also correct, moreover, that the primary subject matter of this lawsuit is "whether Plaintiffs are entitled to payment from Defendants for services performed under the contract and whether defendants have damaged or destroyed plaintiffs' excavator, entitling Plaintiffs to recover damages."   (*Id.*)

In this matter, however, because the plaintiffs allege that the entities that executed the Contract and Annex are alter egos of the named defendants—the entities that stipulate that they will submit to jurisdiction in the Dominican Republic and waive any applicable statute of limitations defenses that could be asserted in a court therein—the ability to pierce the corporate veil and/or disregard corporate formalities is more than merely a theory of recovery, its unavailability potentially denies the plaintiffs a remedy against the only named defendants.   Thus, because the undersigned could not say—based on the information originally before the Court (*e.g.,* Doc. 14-2, Alberto Fiallo

Decl.), which did not specify whether piercing the corporate veil is a theory recognized in Dominican law—that "dismissal in favor of a forum in [the Dominican Republic would be] the functional equivalent of denying the plaintiffs any remedy whatsoever [against the named defendants]," *Kempe*, 876 F.2d at 1145; *see id.* (noting that the courts of the alternative forum, Bermuda, which was found to be adequate, recognized claims for "piercing the corporate veil"), the Court requested that the parties submit supplemental briefs to explain whether the theory is recognized under Dominican law and, if it is not, why a Dominican court nevertheless provides the plaintiffs in this case with a satisfactory remedy against the named defendants.   (*See* Doc. 28.)

Through their supplemental brief (Doc. 29) the defendants have provided the Court with evidence to show that Dominican law "expressly permits piercing of the corporate veil" (*id.* at 3 (citing, *inter alia*, Doc. 29-1, Dr. Manual Berges Chupani Aff., ¶¶ 10, 31; Doc. 29-2, Dominican Republic, Law No. 479-08, enacted on Dec. 11, 2008)) and, moreover, that "[a] claim for piercing the corporate veil is available in the Dominican Republic with respect to the types of claims asserted by Plaintiffs in this case" (*id.* (citing Doc. 29-1, ¶ 30)).[6]   In their response to the defendants' brief (Doc. 30), the plaintiffs first take issue with the defendants' failure to explain, under the applicable choice-of-law principles, which law a court in the Dominican Republic would apply to the veil piercing

---

[6]       According to the defendants, Article 12 of the applicable law "allows a legal entity to be disregarded (i.e., the corporate veil can be pierced) when it is used to commit fraud, conduct illegal acts or defraud and cause damages to partners, shareholders, or third parties." (Doc. 29 at 3.)

issue (*id.* at 3) and then argue that if such a court applied its own substantive law, Dominican law would be less advantageous than Alabama law (*id.* at 4 ("The requirement that a plaintiff prove evidence of fraud or illegal conduct is extremely restrictive and inadequate in comparison to Alabama's law on piercing the corporate veil.") (footnote omitted)).

Both sides also disagree as to which entity is actually being "pierced."  The defendants contend that "Plaintiffs seek to pierce the corporate veil of Cahaba Disaster Recovery Corp., a Panama corporation, the entity with whom CG Builders contracted." (Doc. 29 at 4.)   Thus, if this matter was tried here, Panama's law would apply.   (*See id.*) According to the plaintiffs,

> Cahaba incorrectly presumes[ ] that Group CG seeks to pierce the corporate veil of a Panamanian company, Cahaba Disaster Recovery Corp., with whom Cahaba contends Group CG contracted for debris removal. Group CG's Complaint, however, clearly pleads an enterprise entity/alter ego claim against Cahaba Disaster Recovery, L.L.C. and DRC Emergency Services, L.L.C., alleging that these companies operate an enterprise entity with disregard for the individual entities and corporate formalities.

(Doc. 30 at 2-3 (footnote omitted).)

Regardless, because the defendants have proven that the theory of piercing the corporate veil is available to litigants in the Dominican Republic, the undersigned is satisfied that should this matter proceed in a court in the Dominican Republic, the plaintiffs will not be denied a remedy.   For purposes of determining the adequacy of the Dominican Republic as an alternative forum, it does not matter that Alabama's veil piercing law may be more advantageous, or less restrictive, than veil piercing under

Dominican law.   *See, e.g., Sigalas*, 776 F.2d at 1519 (After *Piper Aircraft*, "[i]t is no longer

sufficient to retain jurisdiction simply because the remedy available in an alternative

forum is less substantively generous."); *Panama Shipping Lines*, 2009 WL 742675, at *3 ("A

forum is adequate even though it provides a remedy that would be substantially less

than the remedy in the United States."); *Meisel*, 2000 WL 33374486, at *5 ("[D]ismissal on

the grounds of *forum non conveniens* may be granted even though the law applicable in

the alternative forum is 'less favorable to the plaintiff's chance of recovery.'") (quoting

*Piper Aircraft*, 454 U.S. at 250).   Accordingly, it appears that the Dominican Republic is

an ***adequate*** alternative forum.   *Cf. Oy Wartsila Ab*, 159 B.R. at 991 ("At the outset we

note that this preliminary 'suitability' question is not a high hurdle. . . .   The guaranty of

Finish jurisdiction over the defendants [both Finnish corporations] is alone a sufficient

basis for conclude that the Finish forum is adequate.").

> 2.      Balancing the relevant private and public factors.

> The second part of the *forum-non-conveniens* test is whether "the public and
> private factors weigh in favor of dismissal."   *Leon*, 251 F.3d at 1311.   This
> comparative inquiry requires the district court to weigh the "relative"
> advantages and disadvantages of each respective forum.   *Piper Aircraft*,
> 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509).

*Tazoe*, 631 F.3d at 1331 (alteration to internal citations).   "Since the touchstone of *forum*

*non conveniens* analysis is convenience, controlling weight cannot be given to any one

factor in the balancing process or the doctrine would lose much of the flexibility that is

its essence."   *La Seguridad*, 707 F.2d at 1307.

16

a.      Private factors.

In "ruling on a motion to dismiss for *forum non conveniens*," a district court in this

Circuit "must consider" specific "private factors," first set forth by the Supreme Court in

*Gulf Oil Corporation v. Gilbert*, 330 U.S. 501 (1947), and later reiterated in *Piper Aircraft*:

> [1] the relative ease of access to sources of proof; [2] availability of
> compulsory process for attendance of unwilling, and the cost of obtaining
> attendance of willing, witnesses; [3] possibility of view of premises, if view
> would be appropriate to the action; and [4] all other practical problems that
> make trial of a case easy, expeditious and inexpensive.

*Tazoe*, 631 F.3d at 1331 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6, (quoting, in turn,

*Gilbert*, 330 U.S. at 508)).

While the plaintiffs argue that because (1) the services performed under the

contract occurred in Haiti solely (*see* Doc. 26 at 9) and (2) "the parties' agreement

regarding [ ] payments [ ] was to be performed in **Alabama**" (*id.* at 10 (emphasis in

original)), the private factors weigh against the Dominican Republic,[7] the undersigned

finds that the pertinent private factors as applied to the facts of this case, set forth below,

weigh slightly in favor of the alternative forum or are neutral:

- The equipment—recall that one of the causes of action is for the loss of, or
damage to, a track excavator—provided to perform the contract is located
in the Dominican Republic.   (Doc. 14-1 at 1-3 ¶ 7.)

- The necessary witnesses and documents not located in the Dominican
Republic appear to be under the control, or in the possession, of the parties
or, possibly as to witnesses, the parties can make reasonable efforts to

---

[7]      The defendants counter that the fact that the agreements were negotiated,
drafted, and executed in the Dominican Republic (*see* Doc. 14-1, Fuzzell Decl., at 1-3 ¶¶ 3-6)
weighs in favor of that forum.

obtain their cooperation:  the defendants, without elaboration, contend that "[a]ll or most of the documentary evidence relating to the Plaintiffs' claims is located in the Dominican Republic and almost all of the persons who may be called to provide live or deposition testimony as witnesses . . . reside in the Dominican Republic or Haiti" (Doc. 14-1 at 1-3 ¶¶ 9-10), while the plaintiffs contend that they sent all work logs and invoices to the defendants' office in Alabama (*see* Doc. 26 at 11), payments were made from Alabama (*see id.*), and that the majority, if not all, knowledgeable witnesses are located in—other than Plaintiff Cabrera, who has stipulated that she will travel to—Alabama (*see id.* at 11-14).

The only Alabama witnesses discussed in the plaintiffs' opposition are Defendant Fuzzell and employees (or then-current employees) of the defendants.   (*See* Doc. 26 at 14).   It is within the Court's power to condition, and the undersigned will recommend conditioning, any dismissal of this action on the defendants' agreement to (1) produce their respective employees and officers—and, of course, documents—for trial in the Dominican Republic and (2) make good faith and reasonable efforts to obtain the cooperation (*i.e.*, assist the plaintiffs with any efforts to depose), and/or attendance at trial, of former employees and officers.   *See, e.g., Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605, 610 (10th Cir. 1998) (affirming district court's *forum non conveniens* dismissal on similar conditions); *cf. Raytheon Eng'rs & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279, 1998 WL 224531, at *5 (5th Cir. Apr. 17, 1998) (per curiam) (reversing district court dismissal in part because the Panamanian witnesses identified by the defendant were "its employees and therefore will be readily available to attend court in [the United States]").

18

b.    Public factors.

Similarly, the public factors, "which pertain to the relative interests of the two fora"—Alabama versus the Dominican Republic—are:

[1 t]he administrative difficulties flowing from court congestion; [2] the "local interest in having localized controversies decided at home"; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Tazoe*, 631 F.3d at 1333 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting, in turn, *Gilbert*, 330 U.S. at 508-09)).   In this case, the applicable public factors can be lumped into two broader categories—local interest and application of foreign law.   And consideration of the factors under those broader categories weighs in favor of *forum non conveniens* dismissal.

i.    Local interest

The plaintiffs contend that this District

has a great interest in this litigation as it involves Alabama companies doing business both in Alabama and in foreign nations. . . .   [Further, t]o the extent that Alabama companies are taking advantage of Alabama corporate law to conduct business in a foreign nation and avoid liability, Alabama has a unique and unparalleled interest in this litigation.

(Doc. 26 at 16-17.)

As discussed above, the Court was concerned initially that the Alabama corporate defendants could avoid liability in the Dominican Republic if that forum did not recognize the concept of piercing the corporate veil.   That concern was been assuaged. Furthermore, since the Alabama corporate defendants will not escape liability and

19

because the plaintiffs contracted with a Panamanian corporate entity, alleged to be the enterprise alter ego of the Alabama defendants, the undersigned has become convinced that Alabama's interest in enforcing its corporate law has little to do with this lawsuit. While ensuring that the plaintiffs will have some remedy against the named Alabama defendants remains an issue, the true focus of the lawsuit is the alleged breach of the agreement between the parties.   *See Harris v. France Telecom, S.A.*, No. 11 CV 357, 2011 WL 3705078, at *5 (N.D. Ill. Aug. 22, 2011) ("While it is true that Anoigma [a successor corporation to a named defendant] was formed under English law, the corporate structure of Anoigma is not significantly at issue here.   Rather, it is the alleged statutory and tortious misdeeds of Defendant that would be analyzed."); *cf. Curiale v. Tiber Holding Corp.*, No. 94 Civ. 4770 (SS), 1995 WL 479474, at *4 (S.D.N.Y. Aug. 11, 1995) (Sotomayor, J.) (noting that "while New York clearly has an interest in seeing its state court judgments collected upon and its insurance business properly conducted, this factor is not compelling enough to overcome the fact that plaintiffs have brought suit in a forum where little, if any, evidence is located and ***whose state law has little, if any, application to the specific dispute at issue***") (emphasis added).

Because Alabama's interest in enforcing its corporate law is not the predominate concern of this lawsuit, the fact that the defendants may have made some decisions regarding the agreement in Alabama is not sufficient to turn this dispute—about an agreement, negotiated and executed in the Dominican Republic and governed by the law of that country, concerning the clean-up of earthquake debris in Haiti—into a

"localized controversy." *See Tazoe*, 631 F.3d at 1333 (there is a "local interest in having localized controversies decided at home") (quoting *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting, in turn, *Gilbert*, 330 U.S. at 508-09)); *cf. Industrial Maritime Carriers (Bahamas), Inc. v. Barwil Agencies A.S.*, No. Civ.A.03-1668, Civ.A.03-1908, 2004 WL 1950322, at *10 (E.D. La. Sept. 1, 2004) (where "federal/Louisiana law" would likely be applied, "Louisiana ha[d] a strong local interest in [ ] litigation" brought by New Orleans Plaintiffs against a Turkish defendant concerning the alleged breach of contracts "formed through communication of the Plaintiffs located in New Orleans on the one hand, and [the defendant] located in Turkey").

ii.    Application of foreign law

Should this case proceed in this Court, the parties appear to agree that the law of the Dominican Republic applies to the interpretation of the contract between the parties. (*Compare* Doc. 14 at 19 n.2, *with* Doc. 26 at 17 (the "possibility that foreign law may apply to [the] Contract [is not] alone [ ] sufficient to warrant dismissal for *forum non conveniens*[]").)    *Cf. Owens v. Superfos A/S*, 170 F. Supp. 2d 1188, 1194-95 (M.D. Ala. 2001) ("[T]he long standing rule in Alabama is that "'the nature, obligation, validity and interpretation of a contract are according to the laws of the state where made, ***or where performance begins***, . . . unless it is to be performed in some other place, in which case the law of the other place and of performance will govern.'") (quoting *J.R. Watkins v. Hill*, 108 So. 244, 245 (Ala. 1926) (emphasis added by the Middle District)).

While the plaintiffs are correct "that the need to apply foreign law is not alone

21

sufficient to dismiss under the doctrine of forum non conveniens[,]" *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 169 (2d Cir. 1991) (citing *Piper Aircraft*, 454 U.S. at 260 n.29)),[8] "[t]he need to resolve and apply foreign law should 'point [the trial court] towards dismissal[,]'" *Sigalas*, 776 F.2d at 1519 (quoting *Piper Aircraft*, 454 U.S. at 251); *see also id.* ("*Forum non conveniens* dismissals are desirable because they obviate the need to engage in 'complex exercises in comparative law.'") (quoting *Piper Aircraft*, 454 U.S. at 251); *Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550(JGK), 2011 WL 2183171, at *9 (S.D.N.Y. June 3, 2011) ("The mere likelihood that foreign law will apply weighs in favor of dismissing the case for *forum non conveniens*.") (citation omitted); *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, No. 5:01-CV-0882. (NAM)(GJD), 2007 WL 2891981, at *14 (N.D.N.Y. Sept. 28, 2007) ("The need to apply foreign law is a factor that weighs in favor of dismissal."). The nature of Dominican law, rooted in the French Civil Code, *see Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 569 n.7 (D.P.R. 1996), moreover, makes application of that law in this Court more difficult and further "tips the balance" toward *forum non conveniens* dismissal, *compare id., with Giro*, 2011 WL 2183171, at *9 ("[T]he likelihood that foreign law will apply tips the balance toward the United Kingdom or Malaysia only slightly, because English law is particularly amenable to application in United States courts.") (citations omitted) *and*

---

[8]     In that case, the court found that because "the contract at issue was negotiated and signed in New York, and the party charged with breach, MG, [was] a New York corporation, New York ha[d] a significant interest in having th[e] breach of contract action litigated in its courts" and those "interests outweigh[ed] any general interest India may have in ensuring that its citizens comply with Indian customs laws."   *Id.*

*Cruise Connections Charter Mgmt. 1, LP v. Attorney General of Canada*, 764 F. Supp. 2d 155, 164 (D.D.C. 2011) ("Because the law of British Columbia is in English and arises from the same common-law tradition from which U.S. law arises, its 'foreignness' is much less than in cases involving civil code countries with different languages, a prominent factor in other cases where courts have dismissed on the ground of *forum non conveniens*.") (collecting cases)[9]; *see also Constab Polymer-Chemie GmbH & Co.*, 2007 WL 2891981, at *14 ("Plaintiff argues the action involves simple breach of warranty, products liability and contract action, but this is an oversimplification of the factual and legal analysis necessary in this matter.  The basis of this lawsuit is a German agreement that was executed and written in German.  Although this Court is able to apply German law when necessary, it makes no pretense that it could do so as knowledgeably or as efficiently as a German tribunal.") (citations omitted).

Further, not only is this Court not "at home with the law that [the parties agree] govern[s]" the interpretation of the contract, *Tazoe*, 631 F.3d at 1333 (citations omitted), the undersigned has identified a potentially thorny conflict of laws issue, *see id.* (identifying "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law" as a **separate** public interest factor).  First, the law of the Dominican Republic would likely not be applied by this Court to the plaintiffs' request

---

[9]    *See also id.* (citing *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 32–33 (D.D.C. 2008) (the law of Cameroon, written in French, applied); *Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 36 (D.D.C. 2006) (the law of Gabon, written in French, applied); *Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 39 (D.D.C. 2002) (the law of Brazil, written in Portuguese, applied).

that certain corporate entities be disregarded for purposes of determining liability.[10]

The law to be applied to the plaintiff's piercing the corporate veil/alter ego theory,[11]

instead *likely* turns on the law of incorporation of the entity—or enterprise of

entities—to be pierced.   *See, e.g., Charter Servs., Inc. v. DL Air, LLC*, 711 F. Supp. 2d 1298,

1306 n.13 (S.D. Ala. 2010) ("DL Air was incorporated in the State of Delaware.   As such,

Plaintiffs' alter ego/veil piercing claims against DL Air are governed by Delaware law.")

(citing *Jefferson Pilot Broad. Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980)

(concluding that "[c]onsistently with the first Restatement, we think that Alabama courts

would look to the law of the incorporating state . . . in deciding whether to recognize or

disregard a corporate entity").

---

[10]     "Critical to any conflicts analysis is the notion that a court must examine the choice of law rules not with regard to various states' interest in general, but precisely with regard to each state's interest in the specific question involved."   *Foster v. United States*, 768 F.2d 1278, 1280 (11th Cir. 1985) (citing *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594 (7th Cir. 1981) (in which the Seventh Circuit, "approve[d] the concept of 'depecage': the process of applying rules of different states on the basis of the precise issue involved[,]" *id.* at 611)); *see also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1172 n.13 (11th Cir. 2009) ("It may seem anomalous that federal maritime law may have governed Cooper's personal injury action while Dutch law governs certain third-party claims that are based on that action, but such an outcome is explicitly recognized by the conflict of laws doctrine of depecage.") (citing *Foster*, 768 F.2d at 1281); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1077-78 (E.D. Wis. 2008) (applying Wisconsin choice of law rules, which are similar to Alabama's, to determine that, as to the breach of contract claims, because Lithuania had "the most significant relationship, taking into account the place of contracting, place of negotiations of the contract, place of performance, location of the subject matter of the contract, and location of the parties," its law applied; but, "as to the question of . . . alter ego," Wisconsin's law applied: "The general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized.") (citations omitted).

[11]     To be certain, the allegations in Count Seven of the complaint do not present a separate cause of action.   *See, e.g., New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133, 143 (Bankr. D.N.H. 2009) ("An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort of a breach of contract, against the corporation itself.") (quotation marks and citation omitted).

As stated above, the defendants contend that the plaintiffs seek to disregard the corporate veil of Cahaba Disaster Recovery Corp., a Panamanian corporation and the entity that actually executed the Contract on February 5, 2010.   The plaintiffs take issue with this and counter that their complaint "clearly pleads an enterprise entity/alter ego claim against [the Alabama corporate defendants], alleging that these companies operate an enterprise entity with disregard for the individual entities and corporate formalities." (Doc. 30 at 2-3.)   This clarification of their theory, however, does not show how the plaintiffs are not requesting that the corporate formalities of the Panamanian corporation be disregarded in order to show that all of the defendants and their related corporate entities, including the Panamanian corporation, operate as an enterprise. Simply put, to show that the Alabama defendants operate as an enterprise with the corporate entity that executed the Contract on February 5, 2010—an entity that is not currently a defendant in this lawsuit—a court, at least in this District, would have to consider Panamanian law.   *See Charter Servs*, 711 F. Supp. 2d at 1306 n.13.   Such consideration tips the balance even further toward *forum non conveniens* dismissal.

> 3.   The plaintiffs' ability to reinstate their lawsuit in the alternative forum without undue inconvenience or prejudice.

Stipulations provided by the defendants (*see* Doc. 14 at 20-21; Doc. 27 at 7), which will be incorporated into this recommendation, ensure that the plaintiffs will be able to reinstate their lawsuit(s) against Defendants Cahaba Alabama and DRC—and file suit against Defendant Fuzzell—in the Dominican Republic.   *See Tazoe*, 631 F.3d at 1334-35

(holding that "[t]he manufacturers' stipulation . . . remove[d] any impediment to reinstatement").[12]    The defendants here have offered similar stipulations.    And, as stated above, the undersigned recommends the dismissal of this lawsuit on certain other conditions, also stipulated to in *Tazoe*.    *See also Del Istmo Assurance Corp. v. Platon*, No. 11–61599–CIV, 2011 WL 5508641, at *9 (S.D. Fla. Nov. 9, 2011) ("[B]ecause Defendants have consented to jurisdiction in Panama ***and the Court will allow Plaintiff to reinstate its case in this Court if*** a Panama court refuses jurisdiction, the Court hereby dismisses Plaintiff's Complaint based on forum non conveniens.") (citing *Leon*, 251 F.3d at 1316, in which "the Eleventh Circuit modified the district court's order of dismissal to provide that jurisdiction could be reinstated in the United States if the Ecuadorian court refused to hear the case") (emphasis added).

B.    Alternative stay of proceedings under either common law doctrine of international comity or the Court's inherent power to control its docket.

Because the undersigned recommends that this matter be dismissed pursuant to the doctrine of *forum non conveniens*, there is no need to address the defendants' alternate theory.

---

[12]    Specifically, there, certain defendants

stipulated that, for actions re-filed in Brazil within 120 days of dismissal, they will consent to service of process and Brazilian civil court jurisdiction, toll any applicable statute of limitations in Brazil, make relevant witnesses and documents under their respective possession, custody and control available, and will respect any final, post-appeal judgment.

*Id.* at 1335.

Conclusion

For the reasons set forth herein, the undersigned **RECOMMENDS** that the motion be **GRANTED** and that this matter be **DISMISSED** on *forum non conveniens* grounds subject to the following conditions:

1. Defendants Cahaba Alabama and DRC must allow the plaintiffs to reinstate their claims against them in the Dominican Republic within 180 days of the Court's final order dismissing this case;

2. Defendant Fuzzell must submit to suit by the plaintiffs in the Dominican Republic for actions filed within 180 days of the Court's final order dismissing this case;

3. The defendants waive ***any*** applicable statutes of limitations or other defenses as a bar to suit in the Dominican Republic;

4. The defendants submit to the jurisdiction of the courts of the Dominican Republic and agree to accept service of process related to actions filed or reinstated against them in the Dominican Republic within 180 days of the Court's final order dismissing this case;

5. The defendants will respect any final judgment rendered by the courts of the Dominican Republic;

6. The defendants must assist the plaintiffs with any efforts to depose or otherwise obtain relevant discovery from, and must produce for trial in the Dominican Republic, their respective employees and officers.

7. The defendants must make good faith and reasonable efforts to obtain the cooperation of former employees and officers with regard to relevant discovery and/or their attendance for trial in the Dominican Republic; and

8. If a court in the Dominican Republic refuses jurisdiction, the Court will allow the plaintiffs to reinstate their case in this Court.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.[13]

**DONE** this the 5th day of July, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Because the Magistrate Judge recommends that this matter be dismissed on *forum non conveniens* grounds subject to the enumerated conditions, it is **FURTHER RECOMMENDED** that the Court **DENY** the plaintiffs' request "that they be granted the opportunity to conduct discovery regarding the allegations contained in the Defendants' Motion to Dismiss and memorandum and exhibits attached thereto." (Doc. 30 at 5 n.11.)

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]       Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P. 72(b)(2).